IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 4:22cr92 |
| v. ) | |
| ) | |
| SALVADOR JERONIMO-SIS, ) | |
| ) | |
| Defendant. ) | |

## DEFENDANT'S POSITION ON SENTENCING

Salvador Jeronimo-Sis, by and through counsel, in accordance with Section 6A1.2 of the *United States Sentencing Guidelines and Policy Statements*, as well as this Court's Sentencing Order, hereby represents that he has reviewed the Probation Office's Presentence Report ("PSR"). He has no objections to the report and hereby states his position with respect to the sentencing factors.

Mr. Jeronimo-Sis does not need to serve any more time behind bars to fully appreciate the wrongfulness of his conduct and know he must never repeat it. This entire experience has been a lifechanging one for Mr. Jeronimo-Sis and his family. He has been incarcerated, thousands of miles from his family, since December 8, 2022. He wishes to leave this country as soon as possible, be reunited with his family, and does *not* plan to return.

Without taking away from the gravity of what he did, Mr. Jeronimo-Sis's life and family circumstances at the time he committed this offense are vital to understanding how he ended up here, and what sentence is appropriate. In short, he came to the United

1

States to work hard and support his family back in Guatemala, a country still healing from a 36-year civil war. However, out of desperation to feed his children and provide treatment for his sick wife, he made the terrible decision to provide fraudulent documents to undocumented individuals. Of course, his actions were illegal and worthy of prosecution. But, it is not the same as committing this offense for greed or power, all while knowingly harming and threatening vulnerable individuals, like his coconspirators.

For the reasons that follow, Mr. Jeronimo-Sis respectfully requests a sentence of time served with no period of supervised release.[1] This sentence is sufficient but not greater than necessary to comply with the mandate outlined in 18 U.S.C. § 3553(a).

### I. Mr. Jeronimo-Sis's history and characteristics support a sentence of time served.

Mr. Jeronimo-Sis's background and motivation, while far from excusing his behavior, shed light on the circumstances that led to his offense and offer context for sentencing. Mr. Jeronimo-Sis grew up on the outskirts of Salama, Guatemala, in a small two-room house. PSR ¶ 41. The house was made of adobe and wood and did not have plumbing or running water. *Id.* When Mr. Jeronimo-Sis was three months old, his father was killed in a conflict with armed insurgents during Guatemala's brutal thirty-six year civil war. *Id.* at 39. His mother worked as a clothing laundress to provide for her four young children. *Id.* at 41. Mr. Jeronimo-Sis reports the family did not have food or water

---

[1] According to pursuant to U.S.S.G. § 5D1.1(c), the Court should ordinarily not impose a term of supervised release because Mr. Jeronimo-Sis would likely be deported immediately.

2

consistently, so he began working in cornfields at eight years old. *Id.* He continued working in the cornfields throughout his childhood and into adolescence, often with his grandfather, to provide food for his mother and siblings. *Id.*

In 2001, Mr. Jeronimo-Sis married his wife and now has four children, aged 19, 12 (twins), and 8. *Id.* at 42. Just as he supported his siblings and mother his entire childhood, he now supports his wife, four children, and continued to support his mother until her passing from cancer in 2017. *Id.* Mr. Jeronimo-Sis continued worked as a laborer in cornfields for decades, from 1990 until 2019. *See id.* at 48.

To sustain supporting his family amidst futile economic opportunities in Guatemala, Mr. Jeronimo-Sis decided to come to the United States. In February 2019, Mr. Jeronimo-Sis made the dangerous journey across Guatemala and Mexico, through the Rio Grande River, and into El Paso, Texas. *Id.* at 10. He was arrested by Border Patrol when he reached El Paso, but there is no record that he was deported or further detained. *Id.* at 35. In fact, Mr. Jeronimo-Sis went on to work as a home remodeler in Richmond, Virginia for the next two years. *Id.* at 47. In 2021, one of his coworkers became sick with COVID-19, the entire crew tested positive, and the supervisor then ceased operating the business, so Mr. Jeronimo-Sis lost his job. *Id.* Around this time, Mr. Jeronimo-Sis's wife—back in Guatemala with the children—became sick with COVID-19.



*Ash Ponders, Photography for NPR (May 2023).*

3

*Id.* at 19. Because public hospitals were filled, she had to be admitted to a private hospital, and shortly thereafter was diagnosed with uterine cancer. *Id.*

Mr. Jeronimo-Sis reports that at this time, facing the loss of his previously steady job, his wife's dangerous diagnosis amid the still-rampant pandemic, and his continued need to support his children, he made the regrettable decision to take part in the instant offense. *Id.* He did not do it to get rich; he sent his earnings back to support his family in Guatemala. *Id.* Mr. Jeronimo-Sis's background demonstrates that although he committed a crime, he was driven by the need to care for his family. He had no idea his documents were being provided to people who were being abused and exploited.

II. **A sentence greater than time served is greater than necessary to achieve the 18 U.S.C. § 3553(a) factors of deterrence, rehabilitation, and protection.**

A sentence of time served will achieve each and every § 3553(a) factor. Any additional time above what Mr. Jeronimo-Sis has already served would be greater than necessary, and a waste of government resources.

Mr. Jeronimo-Sis has been deterred from ever committing this crime—or any crime—again. He wants to go back to Guatemala to be with his family and neither wishes, nor plans, to return to the United States. Mr. Jeronimo-Sis's pre-trial experience has been isolating and frankly terrifying; something he never wishes to repeat. To start, Mr. Jeronimo-Sis does not speak English, which means he struggles to communicate with jail staff or other inmates about his basic needs and needs an interpreter to simply talk with his lawyer. Also, he has no family with resources to give him money, so he can't buy better food options, extra toiletries, or warm clothing, through the jail's commissary. And

4

most difficult for Mr. Jeronimo-Sis, he is not earning any income, so he is unable to send his family any money for food or medical treatment. He knows they continue to struggle in Guatemala without his financial support, a fact that causes him shame, guilt, and pain.

Mr. Jeronimo-Sis came to the United States, and even became involved in this offense, to protect and provide for his family. This plan obviously failed. But, the bottom line is Mr. Jeronimo-Sis does not need any additional time in an American federal prison to decide he will never do this again.

Even if Mr. Jeronimo-Sis were not entirely deterred (though he is), there is no evidence that a sentence of incarceration would lower the risk of recidivism. In fact, the opposite is true, especially for people who have not been previously incarcerated, like Mr. Jeronimo-Sis. *See, e.g., United States v. Graf*, No. 07-CR-320, 2008 WL 5101696, at *2 (E.D. Wis. Dec. 1, 2008) (*citing United States v. Qualls*, 373 F.Supp.2d 873, 877 (E.D.Wis.2005) ("Generally, a lesser period of imprisonment is required to deter a defendant not previously subject to lengthy incarceration than is necessary to deter a defendant who has already served serious time yet continues to re- offend.")).

Additionally, Mr. Jeronimo-Sis does not need further incarceration under 18 U.S.C. § 3553(a)(2)(C) "to protect the public from further crimes…" because he plans to leave the U.S. and not return. He has no other criminal history, and the instant offense is not violent. Mr. Jeronimo-Sis simply wants to go home, work, and provide for his family.

### III. A sentence of time served would not create an unwarranted disparity and would provide just punishment.

This Court would not create an unwarranted disparity if it imposed a sentence of time served. *See* 18 U.S.C. § 3553(a)(6). Such a sentence would also "provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). Though cases just like this one may be rare, Mr. Jeronimo-Sis's codefendants provide an important guidepost on what sentence is sufficient, but not greater than necessary.

This was a large-ranging and very serious conspiracy; indeed, the crimes of his codefendants are truly horrific. The government correctly describes it as a "troubling conspiracy that involved human trafficking of labor, forced labor of a minor victim, and harboring dozens of undocumented noncitizen employees." ECF 89 at 1 (Gov't Pos. on Sent.) However, Mr. Jeronimo-Sis played a relatively small role in it. He never met his co-conspirators in person. All he knew was that Ms. Landaverde was one person – out of many – who requested he obtain fraudulent documents for people. In turn, he requested these documents from his boss, another person he didn't know and had never met in person. Most importantly, Mr. Jeronimo-Sis didn't know Ms. Landaverde's business was exploiting workers, or trafficking minors.

Also notably, Mr. Jeronimo-Sis's life experience is very different from (at least) Mr. Evans', and very likely Mr. Vaughn's. The government describes Mr. Evans as an "educated, wealthy businessman with years of experience as a Chief Financial Officer for successful businesses." *Id*. In contrast, Mr. Jeronimo-Sis grew up poor, in a country

6

reeling from a civil war, and only committed the offense to assist his children and ailing wife.

The Government asks the Court to sentence Mr. Evans to a below-guidelines sentence because he is "relatively less culpable" than Mr. Vaughan and Ms. Aragon Landaverde. *Id.* at 15. Mr. Jeronimo-Sis presents an even stronger argument for a downward variance. He was not personally aware of or involved in the exploitative, illegal organization. He did not commit these offenses to get rich, or exert power. He did not threaten, or physically or emotionally abuse vulnerable people, like his codefendants apparently did. Therefore, a sentence of time served would not create an unwarranted disparity, especially should the Court give Mr. Evans the requested sentence of 40 months, or less.

## CONCLUSION

For the reasons previously stated, the defense respectfully requests this Court to sentence Mr. Jeronimo-Sis to a sentence of time served followed by no supervised release. This will allow Mr. Jeronimo-Sis to leave the United States and return to his young children and wife as soon as immigration authorities are done processing his case. His family needs him to provide food, protection, and medical care as his wife battles cancer. Any greater sentence would be greater than necessary to achieve the policy purposes set forth in 18 U.S.C. § 3553(a).

Respectfully submitted,

SALVADOR JERONIMO-SIS
By: _____/s/_____

Amanda C. Conner
Virginia State Bar No. 88317
Assistant Federal Public Defender
Office of the Federal Public Defender
500 E. Main Street, Suite 500
Norfolk, Virginia 23510
Telephone: 757-457-0816
Facsimile: 757-457-0880
Email: amanda_conner@fd.org